LARRY J. BRANDT and HELEN M. BRANDT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brandt v. Commissioner
Docket No. 6170-80.
United States Tax Court
T.C. Memo 1982-180; 1982 Tax Ct. Memo LEXIS 571; 43 T.C.M. (CCH) 1017; T.C.M. (RIA) 82180; April 7, 1982. Larry J. Brandt, pro se. Patrick Putzi, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1977 in the amount of $ 338. One of the issues raised by the pleadings has been conceded by respondent, leaving for our determination the following: (1) Whether Larry J. Brandt is entitled to deduct all or any part of the $ 436.45 he expended for a flight engineer training course; (2) whether Mr. Brandt may deduct all or any part of the $ 814 *572 which he claimed as an ordinary and necessary business expense for automobile rental while serving on temporary additional duty in Germany; and (3) whether Mr. Brandt may deduct all or any part of $ 52.84 which he expended for social functions of his wing or squadron. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Dover, Delaware, at the time of the filing of their petition in this case, filed a joint Federal income tax return for the calendar year 1977 with the Internal Revenue Service Center, Philadelphia, Pennsylvania. Larry J. Brandt (petitioner) was a career officer in the United States Air Force. During the year 1977 while he was a major serving as a flight commander (pilot), he made inquiries to Airline Ground Schools, Ltd. with respect to its three-day course to prepare individuals to take the written examination given by the Federal Aviation Administration (FAA) as part of the requirements to qualify as an air transport pilot or flight engineer. In reply he received a letter from the president of the school enclosing information with respect to the courses and referring to the high *573 degree of success of graduates in obtaining positions after completion of the courses and successful passing of the FAA examinations. The information furnished to petitioner contained lists of the courses offered, and a document listing the qualifications for the written flight engineer's examination. This document stated that before taking the written test an applicant for a flight engineer's certificate must present satisfactory evidence of one of the following: (1) at least three years of diversified practical experience in aircraft and aircraft engine maintenance; (2) graduation from a two-year specialized aeronautical training course in maintaining aircraft and aircraft engines; (3) a degree in aeronautical, electrical or mechanical engineering from a recognized college, university or engineering school and at least six calendar months of practical experience in maintaining certain types of aircraft engines; (4) a commercial pilot's certificate with an instrument rating; (5) at least 200 hours of flight time in a transport category plane as pilot in command or second in command performing the functions of a pilot in command; (6) at least 100 hours of flight time as a flight *574 engineer; or (7) within a 90-day period before application for the written test, successful completion of an approved flight engineer ground and flight course of instruction covering a period of at least six weeks. All seven of the categories required in addition at least five hours of flight training performing the duties of a flight engineer, but under the FAA rules the written examination could be taken before acquiring this required flight training. The material supplied to petitioner with respect to the three-day course referred to the course as a cram course for the written examination for flight engineer. The course was referred to as "Flight Engineer turbojet--basic written examination preparation. Occupational Objective: Flight Engineer (CA D.O.T. Number 61.281)." During 1977 petitioner took the three-day flight engineer's course offered by Airline Ground Schools, Ltd. In connection with taking that course and taking the FAA flight engineer's examination, petitioner incurred and paid in 1977 the following amounts: Item
Amount
Tuition
$ 175.00
Mileage (0575 mi. at 17 cts. per mi.
97.75
Highway tolls
6.70
Meals and tips
102.88
Motel
29.12
FAA flight test
25.00
Total
$ 436.45
*575 Petitioner later received flight engineer's certificate No. 507344283 dated February 14, 1980. Petitioner in addition held an air transport pilot's certificate also dated February 14, 1980, and a mechanic's certificate dated February 14, 1980. Petitioner also held a flight instructor's and pilot's certificate which he had acquired prior to 1977. [1]
*576 During a part of 1977 petitioner was ordered on temporary duty to Ramstein Air Base (Ramstein), Germany, to serve as supervisor of flying augmentation. His orders for such temporary duty provided that Government quarters and messing facilities should be utilized if available and specifically stated that he required single-room occupancy in on-base quarters due to changing shift schedule and the specific nature of his temporary duty affecting safety of flights. Petitioner actually was on temporary duty in Germany for a little over 44 days, but 12 days of this time was spent on leave. While petitioner was on temporary duty, he was furnished a room in the Bachelor Officers' Quarters (BOQ) and was paid a flat per diem rate to purchase his meals. A supervisor of flying augmentation must be present at the flight line of the Ramstein base at all times. Therefore, each person in this capacity was on a 12-hour-on and 12-hour-off duty schedule. Various Air Force flight crews would come into Ramstein for crew rest. At times there was not enough room on the base to house them and they would be taken to various cities surrounding the base to hotel rooms. It was the duty of the supervisor *577 of flying augmentation to see that members of visiting crews were transported to and from their hotels. The Air Force furnished a six-passenger pickup for use on the flight line. However, this pickup contained radio equipment and therefore was generally not permitted to leave the flight line other than to take personnel to the BOQ and back to the flight line. It was very difficult to obtain a civilian taxi at Ramstein. The Air Force operates a motor pool at the base on a priority basis. If petitioner or other persons of his rank called for transportation by the motor pool, they had a priority below that of higher ranking officers that continuously came to the base. Flag officers and generals, as well as NATO officers, had first call on the motor pool. Ramstein is the United States Air Force headquarters in Germany and also the NATO Air Force headquarters there. If a person of petitioner's rank called the motor pool for transportation, it would be furnished to him on a delayed basis and usually required a wait of an hour to two hours to obtain transportation. Sometimes the motor pool transportation would be a crew bus or a six-passenger van or a station wagon. The motor pool *578 would use whatever transportation it had available at the time. Any reimbursement of expenses which petitioner incurred at Ramstein was made through his permanent station in Dover, Delaware. Any form of transportation other than the motor pool transportation which petitioner used at Ramstein, including taxicabs, would not have been reimbursed to him by his unit in Dover, Delaware, because under the unit rules Ramstein was considered a place that had Government transportation available. After petitioner had been working at Ramstein for about two days he found the motor pool transportation unsatisfactory in his work and rented an automobile which he used to drive from the BOQ to the flight line, to run errands connected with his work to other areas on the base, to drive crews that came in for rest to their hotels and pick them up at their hotels, as well as to drive from the BOQ to where he ate his meals and back again. Petitioner showed as the dates he was at Ramstein June 29, 1977, to August 12, 1977, and his travel voucher was prepared on this basis, indicating that he was on leave for 12 of these days.The receipt for the cost of petitioner's automobile was in German marks. *579 Petitioner converted this cost to American dollars at a little over $ 1,000. The actual car rental cost without any of the other attendant expenses was approximately $ 19 per day. During 1977 petitioner and other officers in his squadron paid $ 3.50 a month to a squadron entertainment fund. This fund was used for certain social affairs that the squadron held. At some of these affairs there would be an additional charge for lunch or dinner. Petitioners, on their Federal income tax return for the calendar year 1977, deducted $ 436.45 as ordinary and necessary business expense for education, $ 814 as business expense for auto rental for transportation while on temporary duty, and $ 52.84 for mandatory entertainment. Respondent, in his notice of deficiency, disallowed these claimed deductions on the ground that they had not been shown to be ordinary and necessary business expenses. OPINION Section 162 [2] provides for deduction by a taxpayer of ordinary and necessary business expenses. Section 1.162-5, Income tax Regs., sets forth the standard for deduction as ordinary and necessary business expenses of amounts expended for education. Section 1.162-5(a) of the regulations *580 provides that except as otherwise stated in subparagraph (b), a deduction may be taken for educational expenses which maintain or improve the skills required by an individual in his employment or other trade or business or meet the express requirement of the individual's employer. One of the exceptions to the deductibility of educational expenses which meets this standard is amounts paid for education that is part of a program of study which will lead to qualifying the taxpayer in a new trade or business. [3]
*581 It is petitioner's position that the cram course he took for the written examination for flight engineer was education which improved his skills as a command pilot in an Air Force C5A. Petitioner argues that as a command pilot he is responsible for the entire plane and a better knowledge of the work of the flight engineer was helpful to him in his work as a command pilot. While respondent does not concede that the three-day cram course petitioner took to pass the flight engineer's examination was helpful to petitioner as a commissioned officer command pilot of a C5A military aircraft, respondent's primary position is that this education was part of a course of study leading to qualifying petitioner in a new trade or business. It is respondent's position that a flight engineer's position is a different trade or business from a pilot's. It is clear that in the Air Force a flight engineer's trade or business is entirely different from a pilot's trade or business.Different training is required for the positions, different functions are served by the pilot and the flight engineer, and the pilot is required to be a commissioned officer while the flight engineer is required to be an *582 enlisted member of the Air Force. For this reason, it is questionable whether flight engineer training would improve the skills of an Air Force officer pilot. However, in Lund v. Commissioner,46 T.C. 321 (1966), we decided under regulations then in effect that although the functions of a pilot and a flight engineer were different, pilot training taken by a flight engineer was taken for the primary purpose of improving the taxpayer's skill in his work as a flight engineer. In that case we stated (at 323): A flight engineer is essentially a mechanic or an engineer. He is not a pilot. He must have passed an examination administered by the Federal Government and have received a certificate as a flight engineer. Prerequisites to certification may be fulfilled by practical experience in maintenance and repair of aircraft and their engines and accessories, a degree in aeronautical engineering, or previous time in the air as a flight engineer. The functions of pilot and flight engineer are essentially separate and distinct. Qualification for one does not qualify for the other.* * * With the regulations in effect when Lund v. Commissioner,supra, *583 was decided, we would have to decide in this case as a factual matter whether petitioner had sustained his claim that the flight engineer training helped him in his functions as a pilot and that his primary reason for taking that training was to improve his skills as an Air Force officer command pilot. However, the regulations which were adopted in 1967 removed the subjective test for determining the deducibility of educational expenses and provided for an objective test. Under this objective test, amounts expended for education, even though the education may help improve the skills of an individual in his present employment, are not deductible if the education is part of a program leading to qualifying an individual in a different trade or business. [4]
In Glenn v. Commissioner,62 T.C. 270 (1974), we held that amounts expended by a Tennessee licensed public accountant for a review course to prepare him for the Tennessee examination for certified public accountant was not deductible as educational expenses because the amount was expended for education which was part of a program *584 of study leading to a new trade or business. In concluding that a certified public accountant was a different trade or business from a licensed public accountant, we stated (at 275) that the only commonsense approach to determining whether the education is part of a program leading to entry in a new trade or business is that-- a comparison be made between the types of tasks and activities which the taxpayer was qualified to perform before the acquisition of a particular title or degree, and those which he is qualified to perform afterwards. Likewise, in Grover v. Commissioner,68 T.C. 598, 601 (1977), referring to both the Glenn case and Davis v. Commissioner,65 T.C. 1014 (1976), we reiterated our view that a commonsense approach must be taken in deciding whether an educational expenditure qualified a taxpayer for a new trade or business. Using this standard, we conclude that a flight engineer is engaged in a different trade or business from that of a pilot. [5]
*585 The flight engineer is engaged in an engineering occupation and is responsible for keeping the engines of the plane in operational condition, whereas the pilot is responsible for flying the plane.We therefore conclude that petitioner is not entitled to deduct any portion of his claimed educational expenses since the amount expended on education was part of a program qualifying him for a new trade or business--that of a flight engineer. Respondent does not contend that petitioner did not actually use the automobile he rented at Ramstein in connection with his work. It is respondent's position that since transportation was furnished on the base, no part of the automobile rental constituted an ordinary and necessary business expense for petitioner. Respondent contends that petitioner could have used the motor pool transportation on the base and therefore the use of the rented automobile was entirely for his personal convenience. Respondent further takes the position that if we conclude that some portion of the cost of renting the automobile was an ordinary and necessary business expense for petitioner, petitioner has failed to properly allocate the automobile rental cost between *586 business and personal usage and, for that reason, the entire claimed deduction should be disallowed. Whether the cost of using a rented automobile was an ordinary and necessary business expense for petitioner requires a factual determination. If, in fact, the automobile was used only for petitioner's personal convenience, no part of the cost is deductible. However, if military transportation was so inadequate that petitioner could not properly perform his duties without the use of a personal automobile, the cost to petitioner of using the rented automobile in connection with his work is an ordinary and necessary business expense. [6] Petitioner here has clearly shown that a part of the use of the automobile was in driving from one area of the base to another and in driving crews that came in from the flight line to their hotel. Since, in our view, the record clearly establishes that the motor pool transportation was not adequate for these purposes and the efficiency of petitioner's performance of his work at Ramstein was greatly enhanced by use of an automobile, the cost of this driving is clearly deductible as an ordinary and necessary business expense. The record also establishes *587 that petitioner was not entitled to reimbursement for this expenditure. The remaining question with respect to the automobile expense is whether petitioner has introduced adequate evidence to show the part of the automobile expense which was personal and the part which was business. In our view, the record is sufficient to establish at least a minimum amount of the cost as business usage of the automobile.The actual cost of renting the automobile was, according to petitioner's testimony, $ 19 a day. Petitioner also testified that he was in a work status for 28 or 29 days during the time he was on temporary duty. The amount of $ 532 is the cost to petitioner for rental of the car for 28 days. It is reasonable to infer from petitioner's testimony *588 that on the days he was actually working 12 hours either during the day or 12 hours during the night on the flight line, he engaged in few personal activities. However, the driving of the automobile from the BOQ to the places where petitioner ate his meals would be considered a part of the cost of his living expenses which would be included in the per diem allowance he was given by the Air Force. [7] It is clear, however, that a relatively minor portion of the cost of the rental of the car should be allocated to this driving and that other expenses of business driving would offset any amount so allocated. We therefore conclude that petitioner is entitled to deduct the amount of $ 532 for business use of the rented automobile. Section 274(d) provides *589 that no deduction shall be allowed for an entertainment expense unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement the amount of such expense, the time and place of the entertainment, and the business relationship to the taxpayer of the person entertained. Petitioner has totally failed to comply with the requirements of section 274(d) with respect to the $ 52.84 expenditure he claimed on his return for mandatory entertainment. We therefore sustain respondent's disallowance of this claimed deduction. Decision will be entered under Rule 155.
Footnotes
1. During the year 1977 and for some time prior thereto, petitioner was the command pilot on a C5A military aircraft. The normal crew of a C5A aircraft consists of two pilots, both of whom are commissioned officers, one navigator who is a commissioned officer, two flight engineers, both of whom are enlisted personnel, one crew chief who is an enlisted member of the Air Force, and three loadmasters, all of whom are enlisted. The FAA standard requirements for the positions of pilot and flight engineer are not the standards applicable to the Air Force. The Air Force maintains its own standards for pilots and flight engineers set by its own regulations. Air Force pilots are all commissioned officers. Flight engineers are all enlisted personnel. The Air Force neither requires nor encourages its pilots to undertake training or education which would qualify them as flight engineers. In order for an Air Force pilot to become an Air Force flight engineer, it would be necessary for him to terminate his commission and enlist in the Air Force. After his enlistment, a training period of approximately 18 months would be required in order for him to qualify as an Air Force flight engineer.↩
2. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue. ↩
3. Sec. 1.162-5(a), Income Tax Regs., provides in part as follows: Sec. 1.162-5. Expenses for education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education-- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. (b) Nondeductible educational expenditures--(1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures, or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations. (2) Minimum educational requirements. (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or business), he shall be treated as continuing to meet those requirements even though they are changed. (3) Qualification for new trade or business.↩ (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment. For this purpose, all teaching and related duties shall be considered to involve the same general type of work. * * *
4. Cf. Roussel v. Commissioner,T.C. Memo. 1979-125↩, n.2.
5. In McElhany v. Commissioner,T.C. Memo. 1981-547↩, we concluded that the occupation of flight engineer was a different trade or business from the trade or business of being a pilot, stating: "* * * the training petitioner undertook qualified him as a flight engineer which required substantially different skills from the skills required of a pilot."
6. In Stewart v. Commissioner,T.C. Memo. 1976-390↩, we held on facts similar to those here involved with respect to automobile expense that a person working at Hill Air Force Base was entitled to deduct the cost of driving his personal automobile to various places he was required to visit on the base in connection with his employment since other forms of transportation were totally inadequate for the taxpayer's needs.
7. In thos connection we note that on the Form 2106 attached to petitioner's tax return he showed total cost of meals and lodging while away from home of $ 6,204 less a reimbursed allowance of $ 2,992.63, leaving excess expenses of $ 3,221.37 which petitioner deducted as employee business expenses on Line 23 of his Form 1040 Federal income tax return for the year 1977. This deduction by petitioner was not disallowed by respondent.↩